SAMUEL, Judge.
Plaintiff instituted this suit against her son seeking reimbursement of money she allegedly expended for the down payment on a home purchased in the name of the defendant, for certain improvements thereto, and for certain expenses connected therewith. Defendant answered, denying plaintiff had made any of the alleged expenditures and averring he had paid with his own funds all of the costs and expenses in question. Defendant also filed an exception of prescription of three years for money lent.
Following trial on the merits judgment was rendered in favor of plaintiff. Defendant has appealed. In this court he contends the trial judge’s finding of fact is erroneous and the actual fact is that he, not the plaintiff, paid all of the costs and expenses; alternatively, he urges his exception of prescription, citing LSA-C.C. Art. 3538 and Hayes v. Thomas, La.App., 143 So.2d 286.
The record contains copies of the act of sale transferring the property and of the act of mortgage thereon. Both acts were passed on March 4, 1955. The consideration for the sale to the defendant was $10,500 in cash. The mortgage note given by the defendant was payable in monthly installments of $55.31 plus 4i/£% per annum interest on the unpaid balance. We feel mention should be made of the fact that there was an unusual delay in the litigation due principally to the loss of a portion of the record because of Hurricane Betsy. The matter can be disposed of at this time only because of a joint stipulation by both counsel relative to the missing transcript of the testimony of one of the material witnesses.
Plaintiff testified as follows: She paid the $1,050 down payment using funds she obtained by cashing two insurance policies for a total amount of $800 and by borrowing $300. She was regularly employed at Lane Cotton Mills and made the later payments for improvements and other expenses, such as a fence, construction of a shed, sewerage, etc., out of the salary she earned plus some unemployment compensation and social security benefits she received while out of work for about six months as a result of illness involving surgery. In addition (although she makes no claim for these amounts), she paid one-half of the monthly mortgage installments until March, 1959. None of the money thus expended by her was either given or loaned to the defendant; it was expended in compliance with an understanding entered into between herself and the defendant prior to the purchase of the property whereby when the home was bought it would be hers as long as she wanted to live there and after she left, or after her death, the defendant would take over. Despite this agreement defendant ejected her from the home in March, 1959.
A plaintiff witness, Curtis G. Eichman, testified that as a representative of the realty company which handled the sale of the home to the defendant he had received the entire $1,050 down payment (10% of the purchase price) from plain *546 tiff in the form of checks which she endorsed to the realty company. He also testified the defendant was present at that time and emphatically said he would never defraud his mother of the money she was advancing' for the purchase of the home, stating there always should be “death before dishonor”.
Plaintiff also offered the testimony of two other witnesses, the manager of the bank where defendant had his bank account and the treasurer of the credit union where he likewise had an account. It is clear from their testimony that, at the time the down payment was made, the defendant did not have funds in those accounts sufficient to cover the amount of the down payment and he had not made any sizeable withdrawals.
Defendant testified he paid the $1,050 down payment, and later the costs and expenses in question, from his personal funds. He denied ever entering into an agreement with his mother whereby she would have the right to live in the home for the remainder of her life. His mother did live with him in the home for some time following its purchase. In June, 1955 he married and moved to an apartment, returning in August or September of the same year with his wife. From June to August, 1955, while he was not occupying the home, his mother paid the mortgage notes maturing during that time. Subsequently he and his wife were divorced. After their separation in 1956 his mother continued to live with him and he paid the bills. Plaintiff first made a demand on him for money in 1959. He denied making any statement to the effect that plaintiff’s money had been used for the down payment, or about “death before dishonor”, as testified by the plaintiff witness, Eich-man.
The record contains the testimony of only two other witnesses, both of whom were plaintiff’s sons and defendant’s brothers. They had been present on the occasion when their mother and a policeman had gone to the home after the defendant refused to permit his mother to remove her clothes therefrom. The defendant permitted such removal only after being urged to do so by the policeman. One of these witnesses, called by the plaintiff, testified he heard the defendant admit his mother had made the down payment on the house and further say: “but try and get it”. The other witness, called by the defendant, testified he did not recall any discussion relative to money or any admission having been made by the defendant.
We find no merit in appellant’s contention that the finding of fact by the trial court is erroneous. The only evidence in the record relative to the nature of the transaction under which plaintiff claims she made the expenditures is contained in the testimony of the two litigants. Plaintiff’s testimony on that point is clear and, in part at least, corroborated by the testimony of other witnesses. The defendant simply denied his mother had made the expenditures, a denial entirely uncorroborated by any other evidence and which, insofar as concerns the down payment and two defendant admissions that the same was made by the plaintiff, was contradicted by the testimony of Eichman, a completely disinterested witness, and one of defendant’s brothers. Thus the evidence in the record amply supports the trial judge’s conclusion that the amount of money he awarded to plaintiff was expended by her under an oral contract whereby, in return for those expenditures, the defendant was obligated to allow her to live in the home until her death or until she voluntarily left.
We have found it unnecessary to discuss the sufficiency of plaintiff’s proof of the other various items included in the award as appellant makes no contention regarding the same. It suffices to say that the suit seeks judgment in the total amount of $3,629.84, the trial judge awarded $1,836.10, this being the total amount he found plaintiff had substantiated by testimony and by *547 documentary proof, and we agree with that conclusion.
In view of the nature of the transaction between the two litigants, appellant’s exception of prescription also is without merit. The codal article and the case relied on by appellant, LSA-C.C. Art. 3538 and Hayes v. Thomas, supra, are inapplicable. The article establishes a three year prescription for the payment of money lent and the case involves such an action. But this is not an action for the payment of money lent; the money sought to be recovered herein was not loaned to the defendant; it was expended for him under an oral contract between the two litigants; and this is an action on that contract. Under these circumstances the applicable prescription is ten years under LSA-C.C. Art. 3544. The fact that the contract was oral rather than written is not material. Antoine v. Franichevich, 184 La. 612, 167 So. 98; Blattmann Sheet Metal Works v. Allgeyer, La.App., 86 So.2d 570; Gore v. Veith, La.App., 156 So. 823.
In this case the down payment on the purchase price of the home was made in the early part of the year 1955. As all other expenditures claimed by the plaintiff were made subsequent to the time she made that down payment, and as this suit was filed on December 13, 1961, clearly the ten year prescriptive period has not run.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.